IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GAIL BARNETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-2840-D |
| VS. | § | |
| | § | |
| PERFECT SEARCH CORPORATION, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Among the questions presented by defendants' motion for judgment on the pleadings is whether Texas law requires that, before seeking recourse against a third party, a spouse defrauded of community property by the other spouse must first seek recourse against the property or estate of the disposing spouse. For the following reasons, the court grants defendants' motion in part and denies it in part.

I

Plaintiff Gail Barnett ("Barnett") sues defendants Perfect Search Corporation ("PSC"), George Watanabe ("Watanabe"), and Timothy Stay ("Stay") to recover under Texas law on claims for money had and received; trespass; fraudulent transfer, in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2015); conspiracy to commit fraudulent transfer; fraud by non-disclosure; unjust enrichment; conversion; and a declaratory judgment that certain stock subscription agreements are void. Barnett alleges that following the death of her late husband Collier

Barnett ("Collier") in 2013, she discovered that, contrary to her wishes, he had made five investments in defendant PSC. In her amended complaint, Barnett alleges that, despite her express rejection of Collier's proposal that they invest in PSC, he purchased PSC shares[1] with community property funds, and without her knowledge or consent, forging her signature on the documentation for the second, third, and fifth purchases. Barnett also alleges that Collier informed PSC on numerous occasions that she did not know about the investments, that Collier did not want PSC to disclose the investments to her because he wanted them to be a "pleasant surprise" for her, and that all correspondence should be directed to a friend of Collier's so that Barnett would not find out about the investments. Am. Compl. ¶ 19.

Before he passed away, Collier executed a will and revocable trust declaration. Under Collier's will, all assets remaining after the payment of then-existing enforceable debts, expenses, and taxes were to be transferred into the Barnett Revocable Trust, which was to be administered for Barnett's benefit for the remainder of her life. Barnett first discovered Collier's investments in PSC during the administration of his estate. She contends that the PSC shares that he purchased for the total sum of $450,000 are now worth approximately $32,659.50, resulting in a loss of $417,340.50.

---

[1]Collier purchased 25,000 shares on or about January 14, 2011, for $100,000; 25,000 shares on or about August 26, 2011, for $100,000; 12,500 shares on or about December 13, 2011, for $50,000; 25,000 shares on or about December 20, 2011, for $100,000; and 25,000 shares on or about March 9, 2012, for $100,000.

Barnett sued PSC and two PSC officers, Watanabe and Stay,[2] in Texas state court, alleging various claims under Texas law. After defendants removed the case, this court granted their motion for judgment on the pleadings, but permitted Barnett to replead. *See Barnett v. Perfect Search Corp.*, 2014 WL 6805529, at *4 (N.D. Tex. Dec. 3, 2014) (Fitzwater, J.) ("*Barnett I*"). Barnett filed an amended complaint,[3] and defendants move anew for judgment on the pleadings. Defendants maintain that all of Barnett's claims should be dismissed because she has not alleged that recourse against Collier's property or estate would be of no avail. They contend in the alternative that Barnett's right of recovery against them must be limited to her one-half community interest in the funds used to invest in PSC. Barnett opposes the motion.[4]

II

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313

---

[2]On June 22, 2015 the court entered an agreed order granting defendants' motion for judgment on the pleadings dismissing Barnett's claims against Watanabe and Stay for money had and received, trespass, unjust enrichment, and conversion.

[3]In the caption of Barnett's amended complaint, she inadvertently lists the Estate of Collier Barnett as a defendant.

[4]On May 5, 2015 Barnett filed a "response to defendants' reply brief." Because this is in effect a surreply that Barnett filed without leave of court, the court has not considered it in deciding defendants' motion.

F.3d 305, 313 n.8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation omitted)).

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive defendants' motion, Barnett's amended complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more

than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

### III

### A

In *Barnett I* the court explained that, under Texas law:

> [i]f a spouse disposes of community property in fraud of the other spouse's rights, the aggrieved spouse has a right of recourse first against the property or estate of the disposing spouse; and, if that proves to be of no avail, then the aggrieved spouse may pursue the proceeds to the extent of her community interest into the hands of the party to whom the funds have been conveyed.

*Barnett I*, 2014 WL 6805529, at *3 (alteration in original) (quoting *Carnes v. Meador*, 533 S.W.2d 365, 371 (Tex. Civ. App. 1975, writ ref'd n.r.e.)). It therefore held that "Barnett can only recover against defendants if she first establishes that recourse against Collier's property or estate would be of no avail," and that Barnett had failed to "plead factual content that allows the court to draw the reasonable inference that seeking recourse against Collier's property or estate would be of no avail." *Id.*

Like Barnett's state court petition, Barnett's amended complaint contains allegations that support the premise that she is asserting that Collier defrauded her when he made the five investments in PSC. *See, e.g.,* Am. Compl. ¶ 79 (alleging that Collier fraudulently transferred $450,000 to PSC and did so with the "intent to hinder, delay, and defraud" Barnett). As in *Barnett I*, the court holds that Barnett can only recover against defendants

if she first establishes that recourse against Collier's property or estate would be of no avail. *Barnett I*, 2014 WL 6805529, at *3. Barnett has failed to plead factual content that allows the court to draw the reasonable inference that seeking recourse against Collier's property or estate would be of no avail. *Id.*

B

Barnett maintains that *Carnes* is inapplicable to her claims for fraudulent transfer, in violation of TUFTA, and for conspiracy to commit fraudulent transfer because *Carnes* applies only to claims for constructive fraud. She posits that TUFTA, which was enacted after *Carnes* was decided, authorizes her as a creditor to sue directly the recipient of a fraudulent conveyance to recover equitable relief and money damages. The court disagrees.

Although a "spouse" is included in TUFTA's definition of who can be a "creditor" under the Act,[5] the Supreme Court of Texas has declined to hold that TUFTA supersedes contrary rules of Texas common law. In *Chu v. Hong*, 249 S.W.3d 441 (Tex. 2008), the court addressed, in pertinent part, whether a former wife (Chong Hui Hong ("Hong") could recover damages from her former husband's attorney (William Chu ("Chu")) on a theory that he had conspired to commit a fraudulent transfer, conversion, or breach of fiduciary duty that resulted in her loss of community property. *Id.* at 444. The question presented was whether Chu (a third party) could be held liable in tort when the community property at issue was

---

[5]*See Thomas v. Casale*, 924 S.W.2d 433, 437 (Tex. App. 1996, writ denied) (noting in *dicta* that "the term 'creditor' is defined by [TUFTA] to include a spouse who has a claim for property fraudulently transferred by the other spouse," but concluding that trial court did not mention TUFTA because there was no evidence to support such a claim).

taken by one of the spouses (Hong's former husband). *Id.* at 445 ("But the question presented here is a narrower one: whether a third party can be held liable in tort when community property *is taken by one of the spouses*."). Relying on and quoting its earlier decision in *Cohrs v. Scott*, 161 Tex. 111, 338 S.W.2d 127 (1960), the court held that "'the fraud having been initiated and carried out mainly by the husband, [the wife] must look primarily to him and his property to right the wrong.'" *Chu*, 249 S.W.3d at 445 (quoting *Cohrs*, 338 S.W.2d at 133) (alteration in original). Noting that there were "several reasons" why it "believe[d] that remain[ed] the property rule," the court explained as the first reason that "[i]f one spouse retains the fruits from defrauding the community estate, it is hard to see how the estate as a whole has been damaged, not to mention why someone else should pay for it." *Id.*

This principle, and the rule on which it is based, appear to have continuing validity regardless of the enactment of TUFTA. In fact, in *Chu* the court explicitly rejected Hong's assertion that TUFTA controlled. The court had relied earlier in its opinion on *Schlueter v. Schlueter*, 975 S.W.2d 584 (Tex. 1998), a case in which it had held that "under the community-property law of Texas, 'there is no independent tort cause of action for wrongful disposition by a spouse of community assets.'" *Id.* at 444 (quoting *Schlueter*, 975 S.W.2d at 589). Although *Schlueter* applied to interspousal claims, its holding and reasoning served as predicates for the court's conclusions in *Chu* regarding Hong's conspiracy claim against Chu, a third party. After stating that it "need not approve of Chu's ethics to hold that *Schlueter* requires Hong to seek restitution from her own husband before seeking it from

someone else's lawyer," *id.* at 446, the court explained:

> [w]e disagree with Hong that *Schlueter* must yield to the provisions of [TUFTA]. *Schlueter* itself involved an alleged fraudulent transfer, and made no exception for that statute. Moreover, the two are entirely consistent: the Act provides for equitable remedies to rescind the fraudulent transfer, or a damage assessment limited to the amount of the property transferred; *Schlueter* allows precisely the same remedies against a former spouse.

*Id.* (footnotes omitted).

The court is aware of no Texas decision that undermines the conclusion that TUFTA is inapplicable where one spouse seeks to recover against a third party for community property taken by the other spouse. Nor is it aware of any decision that undermines the holding in *Carnes* that the defrauded spouse can only recover against a third party if she first establishes that recourse against the other spouse's property or estate would be of no avail. The court therefore adheres to the conclusions it reached in *Barnett I*: Barnett can only recover if she first establishes that recourse against Collier's property or estate would be of no avail, and she must plead factual content that allows the court to draw the reasonable inference that seeking recourse against his property would be of no avail. *Barnett I*, 2014 WL 6805529, at *3.

C

Barnett argues that even if *Carnes* applies, she has nonetheless adequately pleaded her claims. The court again disagrees. In the amended complaint, there is one paragraph that appears to address the requirement that Barnett plausibly plead that recourse against Collier's

property or estate would be of no avail. In ¶ 69, she alleges:

> [a]s the beneficiary of [Collier]'s estate, Mrs. Barnett was and remains entitled to retain not only her entire share of community property, but all of [Collier]'s remaining assets during her lifetime. Thus, recovery against [Collier]'s estate is moot. [Collier]'s estate has transferred, by way of his Will, for the benefit of Mrs. Barnett as the Surviving Spouse under the Will and Trust Declaration.

Am. Compl. ¶ 69. In her brief, Barnett explains that

> [a]s pled, substantially all of the $450,000 fraudulently transferred to [PSC] is gone. Creative accounting between [Collier]'s estate and Mrs. Barnett's remaining assets will not, in any way, result in a net recovery of that money. In order to be made whole, funds must enter Mrs. Barnett's estate from a source other than one to which she was already entitled.

P. Br. 6.

So far as the court can discern, Barnett is making the following argument: in addition to her own community interest in her and Collier's community property, she also inherited Collier's community interest (during her lifetime) under his will. Because she is entitled to her own community interest and to Collier's under his will, there is no property remaining in Collier's estate as to which she can avail herself. But if this is what Barnett means by alleging that a recovery against Collier's estate would be "moot," this cannot be correct. If it were, a disposing spouse who left his entire community interest to his aggrieved spouse would never have an estate from which the aggrieved spouse could seek recourse. There would be little reason for *Carnes* to require that the aggrieved spouse first seek recourse "against the property *or estate* of the disposing spouse." *Carnes*, 533 S.W.2d at 371

(emphasis added).

It may be that Collier's estate is in fact insufficient to satisfy Barnett's claims that are based on Collier's allegedly wrongful disposition of community assets, in which case Barnett *would* be able to "pursue the proceeds to the extent of her community interest into the hands of [the defendants]." *Barnett I*, 2014 WL 6805529, at *3 (quoting *Carnes*, 533 S.W.2d at 371). But the allegations of the amended complaint do not permit the court to draw the reasonable inference that this is so.

Because Barnett has failed to plausibly plead that she has sought recovery against Collier's estate to no avail, the court grants defendants' motion to dismiss Barnett's claims to the extent they are based on allegations that Collier wrongfully disposed of community property when he made the five investments in PSC.[6]

IV

Although defendants request that the court dismiss all of Barnett's causes of action, they do not provide any basis for dismissing Barnett's claim for fraud by non-disclosure—which is premised on an alleged independent duty of the defendants to disclose certain information to Barnett, as a shareholder—or her declaratory judgment action—seeking, based on principles of Texas contract law, to void the stock subscription

---

[6]Because the court is dismissing Barnett's claims based on Collier's alleged wrongful disposition of community assets, the court declines to reach defendants' alternative argument that the court should limit Barnett's recovery to her one-half community interest in the funds Collier invested in PSC.

agreements that bear her forged signature.[7] Accordingly, the court denies defendants' motion to the extent they seek dismissal of Barnett's claims for fraud by non-disclosure and for a declaration that the stock subscription agreements are void.

\* \* \*

For the foregoing reasons, defendants' motion for judgment on the pleadings is granted in part and denied in part.

**SO ORDERED**.

July 31, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[7] In their reply, defendants contend that "[a]ll of Plaintiff's claims against Defendants are grounded in her assertion that Collier fraudulently used community property to invest in PSC." Ds. Reply 2. Although the underlying facts giving rise to Barnett's fraud by non-disclosure and declaratory judgment claims may be based on Collier's allegedly fraudulent use of community property to invest in PSC, the claims themselves—based on the duty of disclosure owed to shareholders and on principles of Texas contract law—are independent from Barnett's claims based on Collier's wrongful disposal of community property.